## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MATTHEW STEPHENS, | : | |
| Plaintiff, | : | Case No. 3:12cv00082 |
| v. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| GRANDVIEW MEDICAL CENTER POLICE DEPARTMENT, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Plaintiff Matthew Stephens was a police officer with Defendant Grandview Medical Center Police Department (GMCPD) for approximately six years until his employment was terminated in September 2011.  (Doc. #3 at 3).  Plaintiff claims he was terminated due to inappropriate pictures he allegedly sent via text message to a female employee at Grandview Medical Center (Grandview), with whom he alleges to have been in a relationship with.  (*Id.*).  Plaintiff now brings claims against GMCPD, Grandview, and Kettering Health Network (KHN) for breach of implied contract, promissory estoppel, and violation of his due process rights.  (*Id.* at 1).

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

This case is presently before the Court upon Defendants GMCPD, Grandview, and KHN's Motion to Dismiss Plaintiff's Third Claim for Relief (Doc. #2), Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. #6), Defendants' Reply (Doc. #12), and the record as a whole.

## II.    MOTION TO DISMISS

Defendants argue pursuant to Fed. R. Civ. P. 12(b)(6) that "Plaintiff cannot establish that Defendants' employment decisions are state action and therefore, his due process claim should be dismissed." (Doc. #12 at 2). Plaintiff contends that because Defendant GMCPD's officers are commissioned pursuant to Ohio Revised Code § 4973.17(D)(1),[2] Defendants are therefore state actors, Defendants' termination of Plaintiff was state action, and Plaintiff's due process rights were violated. (Doc. #6).

Plaintiff states that he was a police officer with Defendant GMCPD for approximately six years until his employment was terminated on September 16, 2011. Plaintiff claims that "Defendant GMCPD is a commissioned police department in the state of Ohio," and that "GMCPD operates a security and police department for the benefit of Defendant Grandview Medical Center, operating out of its Dayton, Ohio

---

[2] Ohio Revised Code § 4973.17 provides certain organizations, including a "nonprofit hospital agency," with the ability to "employ[ ] and maintain[ ] its own proprietary police department or security department . . . ." O.R.C. § 4973.17(D)(1). A "nonprofit hospital agency" is "a corporation or association not for profit, no part of the net earnings of which inures or may lawfully inure to the benefit of any private shareholder or individual, that has authority to own or operate a hospital facility or provides or is to provide services to one or more other hospital agencies." O.R.C. § 140.01(C). Upon such a hospital's designation, "the secretary of state may appoint and commission any persons that the hospital designates, or as many of those persons as the secretary of state considers proper, to act as police officers for the hospital." O.R.C. § 4973.17(D)(1).

2

facility." (Doc. #3 at 2). Plaintiff alleges that "Grandview Medical Center ('Grandview') is a registered trade name of Dayton Osteopathic Hospital, a non-profit corporation, duly organized and existing under the laws of the State of Ohio . . . ." (*Id.*). Plaintiff claims "Grandview is part of the Kettering Health Network," and that KHN "is a registered trade name of Kettering Adventist Healthcare, a non-profit corporation, duly organized and existing under the laws of the State of Ohio . . . ." (*Id.*).

According to Plaintiff, he was suspended from his job on or about July 28, 2011, as a result of allegedly sending inappropriate pictures via text message, while off-duty, to a female employee of Grandview who he claims he was in a relationship with. (Doc. #3 at 3). Plaintiff claims he was not given an opportunity to "tell his side of the story or participate in the investigation," nor that he was provided with all details about "the nature of the complaint and the type of alleged inappropriate behavior he was investigated for." (*Id.* at 4). Thereafter, on September 16, 2011, Plaintiff alleges he was terminated "for violating KHN's Harassment Free Workplace policy and displaying conduct unbecoming a police officer." (*Id.*).

Plaintiff claims he "was denied his due process rights because he was not provided an opportunity to review the evidence against him or otherwise participate in the investigation," and also because "he was not provided the identity of the complainant, cell phone number and/or the date that the alleged inappropriate picture was sent and, therefore, was not permitted an opportunity to present evidence challenging the proposed discharge." (*Id.* at 6). Plaintiff argues because he was commissioned as a police officer

pursuant to Ohio Revised Code § 4973.17, he is a public officer and "entitled to due process, pursuant to the State and U.S. Constitutions, prior to his termination." (*Id.*).

To determine whether a complaint states a claim upon which relief can be granted, the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

In order "to survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements.' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 1965, 167 L. Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge – whether the Complaint raises a right to relief above the speculative level – "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008)(quoting in part *Twombly*, 127 S. Ct. At 1965). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft . Iqbal*, 556 U.S. 884, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw

4

on its judicial experience and common sense." *Id.*

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007))(quoting *Twombly*, 127 S. Ct. at 1964). "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 233, 242, 179 L. Ed. 2d 233, 236 (2011).

## III.   DISCUSSION

"In order to raise a due process claim, a party must have a property or liberty interest of which it is deprived by state action, as the Fourteenth Amendment 'erects no shield against merely private conduct, however discriminatory or wrongful.'" *Lucre, Inc. v. Michigan Bell Tel. Co.*, 238 Fed. Appx. 18, 22 (6th Cir. 2007) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S. Ct. 2777, 73 L. Ed.2d 534 (1982)).  "To state a viable § 1983 claim, a plaintiff must allege that: (1) he or she was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under the color of state law."  *Peace v. Wellington*, 211 Fed. Appx. 352, 357 (6th Cir. 2006) (citing *Flagg Bros., Inc. v. Brooks*,

5

436 U.S. 149, 155-57, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

## A.    Property Right

Plaintiff argues that he has been deprived of a right created by the state because his employment with Defendants as a commissioned police officer was terminated.  (Doc. #6 at 5).  Defendants argue such a termination did not deprive Plaintiff of a right created by the state because, even though his employment was terminated, this was "not an infringement of his right to be commissioned as a police officer under O.R.C. § 4973.17." (Doc. #12 at 8).  Plaintiff contends that arguing "Plaintiff's termination did not, in reality, revoke, his commission, is nonsensical." (Doc. #6 at 6).  Defendants' argument, however, is not without merit.

Although Plaintiff is no longer employed by Defendants, and therefore cannot currently act as a commissioned police officer at Grandview Medical Center, there is no indication that if reemployed by Defendants, Plaintiff would need to be recommissioned by the state.  In other words, it is not entirely clear that Plaintiff lost his commission with Grandview Medical Center, despite the fact he cannot currently act as a commissioned police officer at the hospital due to his termination.  *See, e.g., Knepp v. Lane*, 859 F. Supp. 173, 175 (E.D. Penn. 1994) (despite plaintiff's employment being terminated by defendant, plaintiff was denied leave to amend his complaint to assert a claim under 42 U.S.C. § 1983 where it was determined that his discharge as a licensed securities agent did not infringe upon his "state-granted license rights," despite the fact he could not sell

6

securities without being employed by defendant.).

Nonetheless, as it cannot be determined at this early stage of the case whether Plaintiff's commission with the state was also lost as a result of his termination as a police officer at GMCPD, this Court will assume for purposes of resolving this motion it is plausible, based on the facts alleged, that Plaintiff's commission with the state was also revoked and Plaintiff was therefore deprived of a right or privilege created by the state.

**B.     State Action**

 "Private individuals and companies do not act under color of state law." *Thomas v. Better Bus. Bureau*, 79 Fed. Appx. 748 (6th Cir. 2003) (citing *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)).  "The only exception to this rule is if the actions of the private individual or corporation are so approximate to a state action that the action may fairly be attributed to the state." *Id.*  "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 73 L. Ed. 2d 418, 102 S. Ct. 2764 (1982) (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 73 L. Ed. 2d 482, 102 S. Ct. 2744 (1982)).  In *Lugar*, the Supreme Court "identified a two-part approach to the question of 'fair attribution,' effectively requiring that the action be taken (a) under the color of state law, and (b) by a state actor." *Lansing*, 202 F.3d at 828 (citing *Lugar,* 457 U.S. at 937).

The United States Court of Appeals for the Sixth Circuit applies three tests in order

7

to help determine when the conditions in *Lugar* are met: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test.  *Id.* (citing *Brentwood Academy v. Tennessee Secondary Schools Athletic Association*, 180 F.3d 758, 763 (6th Cir. 1999); *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995); *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992)).  Whether state action exists is a question of law to be determined by the Court.  *See Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002).

Plaintiff's factual allegations, taken as true and construed in a light most favorable to him, do not indicate that Defendants' alleged actions can be attributed to the state.  As discussed below, Plaintiff's allegations do not set forth facts establishing that it is plausible any Defendant can be considered a state actor under the public function test, the state compulsion test, or the symbiotic relationship or nexus test.

### 1.     Public Function Test

"Under the 'public function' test, state action may be present when the private entity exercises 'powers traditionally exclusively reserved to the State.'" *Aladimi v. Alvis House Cope Ctr.*, 2012 U.S. Dist. LEXIS 29694 (S.D. Ohio, March 6, 2012) (Rice, D.J.) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974)).  In this case, even assuming Grandview's proprietary police department – GMCPD – can be deemed to be performing a public function traditionally reserved to the state by performing law enforcement services for the hospital, its decision to terminate an employee is

8

not therefore also state action. *Bell v. Mgmt. & Training Corp.*, 122 Fed. Appx.

219, 223 (6th Cir. 2005) ("[M]ere employment with a government contractor does

not render personnel decisions state action.") (citing *Wolotsky*, 960 F.2d at 1333,

1335; *Crowder v. Conlan*, 740 F.2d 447, 451 (6th Cir. 1984); *George v. Pacific*

*CSC Work Furlough*, 91 F.3d 1227, 1230-32 (9th Cir. 1996); *Sherlock v.*

*Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996); *Cunningham v. Southlake*

*Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107, 109 (7th Cir. 1991))); *see also*

*Aladimi*, 2012 U.S. Dist. LEXIS 29694 at *12 (quoting parenthetically *George*, 91

F.3d at 1230 ("An entity may be a state actor for some purposes but not for

others.")). Accepting Plaintiff's allegations as true, and construing them in a light

most favorable to him, does not show it is plausible under the "public function"

test that any Defendant was a state actor, for employment purposes.

## 2.     State Compulsion Test

     "The state compulsion test requires that a state exercise such coercive

power or provide such significant encouragement, either overt or covert, that in

law the choice of the private actor is deemed to be that of the state." *Wolotsky*, 960

F.2d at 1335 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004, 73 L. Ed. 2d 534, 102

S. Ct. 2777 (1982); *Bier v. Fleming*, 717 F.2d 308, 311 (6th Cir. 1983), cert.

denied, 465 U.S. 1026, 79 L. Ed. 2d 686, 104 S. Ct. 1283 (1984)). "More than

mere approval or acquiescence in the initiatives of the private party is necessary to

hold the state responsible for those initiatives." *Id.* (citing *Blum*, 457 U.S. at 1004).

9

In this case, Plaintiff's Complaint does not set forth any allegations that show the state had any involvement in Defendants' decision to terminate Plaintiff's employment.  Plaintiff alleges he was terminated for "violating KHN's Harassment Free Workplace policy and displaying conduct unbecoming a police officer." (Doc. #3 at 3).  Plaintiff does not, however, allege that the state encouraged or coerced Defendants into terminating his employment, nor that the state somehow approved or acquiesced to the termination.

Although Plaintiff notes that Ohio Revised Code § 4973.17(D)(3) requires a written agreement between Defendants and the municipal corporation's chief of police (Doc. #6 at 8), there is no allegation, or even indication, that any agreement entered into by Defendants with the municipal corporation's chief of police required municipal involvement when terminating an employee or making any other internal personnel decision.

The relevant portion of the Ohio Revised Code likewise does not indicate that such an agreement has anything to do with internal personnel decisions.  An agreement between a municipal corporation's chief of police and a hospital is intended to "set[ ] forth the standards and criteria to govern the interaction and cooperation between persons appointed as police officers for the hospital under [O.R.C. § 4973.17(D)(1)] and law enforcement officers serving the agency represented by the chief of police . . . who signed the agreement in areas of their concurrent jurisdiction."  O.R.C. § 4973.17(D)(1)(b). For example, such an

10

agreement may contain, but not be limited to, "provisions governing investigatory responsibilities relative to offenses committed on hospital property, and provisions governing the processing and confinement of persons arrested for offenses committed on hospital property." *Id.*

Agreements entered into pursuant to Ohio Revised Code § 4973.17(D)(1)(b) simply do not appear to involve provisions relating to the handling of internal personnel decisions, nor does Plaintiff allege any facts in this case leading the Court to believe otherwise. Actually, quite the opposite appears to be true: Plaintiff alleges he was terminated for "violating **KHN's** Harassment Free Workplace policy and displaying conduct unbecoming a police officer." (Doc. #3 at 3) (emphasis added).

Plaintiff's allegations are entirely devoid of any indication the state had any input or involvement in Defendants' decision to terminate Plaintiff's employment. Plaintiff's argument that because Defendants entered into an agreement with the municipal police department, "Defendants are clearly parties who have acted together with or obtained significant aid from state officials" (Doc. #6 at 8), is likewise without merit. Not only does Plaintiff's Complaint lack any allegations that Defendants "obtained significant aid from state officials," however, such an allegation, absent more, would likely still not be enough to convert Defendants' decision to terminate Plaintiff into state action. *See Wolotsky*, 960 F.2d at 1336 ("The actions of a private entity do not become state action merely because the

11

government provides substantial funding to the private party." (citing *Rendell-Baker v. Kohn,* 457 U.S. 830, 840, 73 L. Ed. 418, 102 S. Ct. 2764 (1982); *Crowder*, 740 F.2d at 450))).  Accordingly, Plaintiff's allegations, taken as true and construed in a light most favorable to him, do not show it is plausible under the "state compulsion" test that any Defendant was a state actor, for employment purposes.

### 3.    Symbiotic Relationship or Nexus Test

"Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself."  *Wolotsky*, 960 F.2d at 1336 (citing *Jackson*, 419 U.S. at 351; *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 724-25, 6 L. Ed. 2d 45, 81 S. Ct. 856 (1961)).  "Merely because a business is subject to state regulation does not by itself convert its action into state action." *Id.* Instead, the state must be "intimately involved in the challenged private conduct in order for that conduct to become attributable to the state for purposes of a § 1983 action."  *Bier*, 717 F.2d at 311.

Plaintiff argues that because Defendants' police officers are commissioned pursuant to Ohio Revised Code § 4973.17, Defendants should be deemed to be state actors.  The fact the state commissions Defendants' police officers, however, is not sufficient to make Defendants state actors, for employment purposes.  There

is no allegation or other indication that Defendants' decision to terminate Plaintiff's employment was regulated by the state.  *See Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000) ("[I]t is now well-established that state regulation, even when extensive, is not sufficient to justify a finding of a close nexus between the state and the regulated entity."); *Rendell-Baker*, 457 U.S. at 842 (private entity's employment decisions were not state action where decision to discharge employee was not influenced or compelled by any state regulation). As such, Plaintiff's allegations, taken as true and construed in a light most favorable to him, do not show it is plausible under the "symbiotic relationship or nexus" test that any Defendant was a state actor, for employment purposes.

## IV.    CONCLUSION

Even assuming Plaintiff's termination deprived him of a right or privilege created by the state, Plaintiff has not alleged facts sufficient to show that it is plausible Defendants were state actors, for employment purposes.  Accordingly, Defendants' Motion to Dismiss Plaintiff's Third Claim for Relief (Doc. #2) is well-taken.

### IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' Motion to Dismiss Plaintiff's Third Claim for Relief (Doc. #2) be GRANTED; and,

2.    The case remains pending on the docket of this Court.


May 22, 2012                                          ____s/Sharon L. Ovington____
                                                                    Sharon L. Ovington
                                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).